ZATARAINS & GALLAGHER BASSETT
SERVICES, INC.

VERSUS

DANELLE RODNEY

NO. 24-CA-128

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION
DISTRICT 7
STATE OF LOUISIANA
NO. 21-884
HONORABLE SHANNON BRUNO BISHOP, JUDGE PRESIDING

December 27, 2024

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and Stephen J. Windhorst

**AFFIRMED**
    **SJW**
    **SMC**

**DISSENTS, IN PART, WITH REASONS**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
ZATARAINS AND GALLAGHER BASSETT SERVICES, INC.
 Azelie Z. Shelby
 Sarah K. Lunn

COUNSEL FOR DEFENDANT/APPELLANT,
DANELLE RODNEY
 Scott R. Samuel

**WINDHORST, J.**

Appellant claimant, Danelle Rodney, appeals the judgment of the Office of Workers' Compensation finding she willfully made material misrepresentations relative to the occurrence of the alleged work accidents, her prior injuries, and her prior treatment for the purpose of obtaining workers' compensation benefits in violation La. R.S. 23:1208, thereby forfeiting any and all workers' compensation benefits. Rodney also appeals the OWC's judgment ordering her to reimburse her employer, Zatarains a/k/a McCormick & Co., Inc. and Gallagher Bassett Services, Inc. ("Employers"), for benefits paid to her relative to the alleged accident, attorneys' fees and penalties.

**PROCEDURAL HISTORY and FACTS**

In June 2019, Rodney was employed as a product feeder. On June 21, 2019, Rodney slipped and fell at work in the employee locker room and a few minutes later outside of a trailer at Employers' facility.

On February 10, 2021, Employers filed a disputed claim for compensation against Rodney, asserting that Rodney willfully made false statements and/or misrepresentations regarding her physical condition before the accident, her ability to work before the accident, and her injuries allegedly caused by the accident. Employers claimed that Rodney made these misrepresentations to her employer and/or insurer and/or health care providers for the purpose of obtaining workers' compensation benefits in violation of La. R.S. 23:1208.

In an attached supplemental petition, Employers stated that Rodney alleges she sustained two falls in the course and scope of her employment on June 21, 2019, including (1) when plastic hangers hit her in the face as she entered the employee locker room causing her to fall forward and landed on her hands and knees; and (2) when she tripped and fell because her shoestring on her left shoe caught on a hook on the inside of her right shoe. Rodney advised her employer shortly after the falls

that her right shoulder, left or right knee, and right ankle were sore. Rodney's manager offered to take her to the doctor or hospital, but Rodney insisted she was fine and did not need medical care.

Employers also stated in the supplemental petition that Rodney eventually went to West Jefferson Medical Center and was diagnosed with a shoulder strain and other strains. Rodney later presented to Employers' physician, Dr. Brian Bourgeois, who diagnosed her with a right shoulder strain and released her to return to work at light duty. Rodney subsequently sought treatment from Dr. Peter Liechty where she presented with complaints of neck and low back pain.

According to the supplemental petition, on June 25, 2019, Rodney completed a written statement regarding her version of the alleged accidents and did not disclose any prior work-related injuries. Employers, however, discovered Rodney had filed five prior workers' compensation claims and one prior liability claim for bodily injuries. Employers alleged that Rodney had ongoing complaints due to two previous work-related injuries which required her to miss a significant amount of time from work.

Employers contended that Rodney intentionally and willfully made false statements and misrepresentations to Employers and its insurer regarding her prior back injuries and treatment immediately preceding this alleged accident for the purpose of obtaining workers' compensation benefits, including medical benefits, indemnity benefits and vocational rehabilitation. As a result of Rodney's violations, Employers asserted Rodney forfeited her right to workers' compensation benefits, and sought reimbursement and/or restitution for all benefits paid to Rodney for these alleged falls.

On May 20, 2021, Rodney filed an answer to Employers' disputed claim for compensation and a reconventional demand, denying any misrepresentations. Rodney asserted she had an accident in the course and scope of her employment with

Employers in which she injured her right ankle, both knees, both wrists, both shoulders, her neck, and her back. Rodney sought medical benefits, indemnity payments, penalties, and attorney's fees.

On December 12, 2022, Employers filed a motion for summary judgment, asserting no genuine issue of material fact existed regarding whether Rodney willfully made false statements and misrepresentations for the purpose of obtaining workers' compensation benefits and, as a result, forfeited her right to workers' compensation benefits. Employers asserted that Rodney misrepresented material facts regarding the following: (1) the occurrence and nature of the alleged accidents; (2) the extent of her injuries caused by the work accidents; (3) her ability to work after the accidents; (4) her medical history of vertigo; (5) her injuries caused by prior and subsequent accidents; and (6) the nature and extent of her pre-accident injuries involving her neck, back, left knee, right wrist, right ankle, and left shoulder. Employers attached to their motion for summary judgment numerous exhibits, which included: (1) Rodney's deposition; (2) Rodney's medical records from numerous providers; (3) Rodney's discovery responses; and (4) affidavits from some of Rodney's co-workers regarding the alleged accidents.

After a hearing, the OWC judge granted Employers' motion for summary judgment, finding: (1) Rodney willfully made false statements or misrepresentations regarding the occurrence of her alleged injuries, her injuries, and her prior medical treatment, for the sole purpose of obtaining workers' compensation benefits in violation of La. R.S. 23:1208; (2) Rodney cannot meet her burden to show she sustained injuries related to a June 21, 2019 work accident due to numerous misrepresentations and inconsistencies throughout her deposition testimony and medical records; and (3) Rodney forfeited any and all workers' compensation benefits related to the alleged accidents. The OWC judge also ordered Rodney to

pay Employers reimbursement and/or restitution for benefits paid to Rodney for these alleged falls, attorneys' fees, and penalties.

**LAW and ANALYSIS**

On appeal, Rodney contends that the OWC judge erred in denying her motion to continue the hearing on Employers' motion for summary judgment, striking her opposition to the motion for summary judgment, and in granting the motion for summary judgment. Rodney argues "good cause" existed to continue the summary judgment hearing, and that she did not willfully make false statements for the purpose of obtaining workers' compensation benefits. She contends genuine issues of material fact exist, which preclude summary judgment in favor of Employers.

**Rodney's Motion to Continue**

First, Rodney's counsel argues that the OWC judge erred in denying the motion to continue the hearing because good cause existed for the brief continuance requested. Specifically, Rodney's counsel asserts those good grounds included: (1) his father was experiencing serious health conditions which had deteriorated in nature and which were grave, and (2) his four-year-old son has been battling cancer, all of which severely impacted counsel's professional practice.

We review the OWC judge's denial of the motion to continue the hearing using an abuse of discretion standard. Hadwin v. ABC Ins. Co., 24-72 (La. 4/9/24), 382 So.3d 827, 828. The record shows that prior to trial, Rodney filed a writ application to this court seeking review of the trial court's June 22, 2023 judgment, which denied the motion to continue the hearing. This court denied the writ application, finding no abuse of the OWC judge's vast discretion in denying the motion to continue. McCormick & Co., Inc. v. Rodney, 23-357 (La. App. 5 Cir. 7/19/23) (unpublished). Employers argue the writ disposition is "law of the case."

The "law of the case" principle refers to (a) the binding force of trial court rulings at later stages of the trial, (b) the conclusive effects of appellate rulings at the

trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case. Kenner Plumbing Supply, Inc. v. Rusich Detailing, Inc., 14-922 (La. App. 5 Cir. 9/23/15), 175 So.3d 479, 503, writ denied, 15-2110 (La. 2/5/16), 186 So.3d 1164, and writ denied, 15-2112 (La. 2/5/16), 186 So.3d 1165, and writ denied, 15-2115 (La. 2/5/16), 186 So.3d 1165; Ficarra v. Mt. Vernon Fire Ins. Co., 527 So.2d 493, 494 (La. App. 5 Cir. 1988). This principle can apply to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. Kenner Plumbing Supply, 175 So.3d at 503; In re K.P.W., 03-1371 (La. App. 5 Cir. 5/26/04), 875 So.2d 903, 905. Courts apply the law of the case doctrine to avoid re-litigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Id. The law of the case principle is applied as a discretionary guide, precluding argument where there is merely doubt as to the correctness of the former ruling, but not in cases of palpable error or manifest injustice. Kenner Plumbing Supply, 175 So.3d at 503.

The July 19, 2023 writ disposition relative to the emergency writ application, in which Rodney sought review of the OWC judge's denial of her motion to continue, reflects that this court has already thoroughly considered Rodney's arguments on this issue. There is no indication that this court's prior ruling on the OWC judge's decision to deny Rodney's motion to continue resulted in palpable error or manifest injustice. To reconsider these arguments would be contrary to the purpose of the "law of the case" doctrine.

Accordingly, we consider our prior ruling on the OWC judge's denial of the motion to continue as the "law of the case," and we decline to reconsider the issue in this appeal.

**Rodney's Failure to Properly File or Proffer An Opposition**

Employers filed their motion for summary judgment on December 20, 2022, and the motion was set for hearing on March 3, 2023. Relative to this hearing date, Rodney's opposition was due on February 16, 2023. Rodney did not file an opposition and did not request any discovery by this deadline. On March 2, 2023, one day before the scheduled hearing, Rodney moved without opposition to continue the March 3, 2023 hearing. The hearing was rescheduled for June 22, 2023, which required Rodney to file an opposition by June 7, 2023. On June 12, 2023, Rodney's counsel sent Employers' counsel an e-mail stating that he had just read the motion for summary judgment "in full," and needed a continuance in order to prepare an opposition, which would require the taking of depositions. Rodney did not file an opposition by this date, and instead, on June 14, 2023 Rodney filed an untimely motion to continue the hearing one week after the deadline to file her opposition had passed.

After repeated delays, and assurances that Rodney's memorandum in opposition would be forthcoming, and with the motion for summary judgment set for hearing in a week, Rodney's untimely motion for a continuance requested a "brief continuance of two-to-three weeks" so that Rodney's counsel could prepare an opposition to the motion for summary judgment. Rodney's motion also stated that in order to prepare an opposition, Rodney's counsel would need to take the depositions of a number of witnesses, including all of those who provided affidavits in support of Employers' motion.

Based on the untimeliness objection lodged by Employers' counsel and the court's adherence to the strict time limits of La. C.C.P. art. 966, the OWC judge refused to allow Rodney additional time to prepare an untimely opposition, or to argue his opposition during the hearing because it was filed only seven days prior to

the hearing on the motion for summary judgment, and not fifteen days before the hearing, as required by La. C.C.P. art. 966 B(2).[1]

At the beginning of the hearing, the OWC judge offered Rodney's counsel the opportunity to proffer Rodney's opposition in writing or in oral argument, and on counsel's request, gave him time to consult with Rodney in private. Immediately after the consultation, Rodney declined to give any proffer, and the hearing on the motion for summary judgment commenced. At the conclusion of the hearing, the OWC judge again offered Rodney the opportunity to proffer an opposition for the record, which Rodney again declined.

The clear and unambiguous language of La. C.C.P. art. 966 B(2) states that, absent the consent of the parties and the court, an opposition *shall* be filed within the fifteen-day deadline established by the article. Auricchio v. Harriston, 20-01167 (La. 10/10/21), 332 So.3d 660, 663. The word 'shall' is mandatory. Id.; La. R.S. 1:3. Under well-established rules of interpretation, the word "shall" excludes the possibility of meaning "optional" or even subject to "discretion," but instead means "imperative, of similar effect and import with the word 'must.'" Louisiana Federation of Teachers v. State, 13-120 (La. 5/7/13), 118 So.3d 1033, 1051. The application of the rule in this manner coincides with the summary judgment purpose, which is "to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966 A(2). These time limits have been strictly construed uniformly by Louisiana courts.

Since the motion for summary judgment was filed, at least two deadlines and 175 days passed during which Rodney failed to properly file an opposition. Thus, based on the above law, the OWC judge properly refused to consider her opposition.

---

[1] Based on the motion for continuance and associated memoranda, attached e-mails, and on Rodney's counsel's statements during the hearing, it is unclear from the record whether Rodney actually filed or attempted to file any opposition to the motion for summary judgment. He did not proffer any opposition when invited to do so by the judge.

**The Motion for Summary Judgment**

An appellate court reviews an OWC judge's decision to grant a motion for summary judgment in workers' compensation cases *de novo*, using the same criteria that govern the OWC's consideration of whether summary judgment is appropriate. Rodriguez v. Nola Motor Club, L.L.C., 19-447 (La. App. 5 Cir. 10/5/20), 304 So.3d 147, 149, writ denied, 20-1432 (La. 2/17/21), 310 So.3d 1154. This court and other Louisiana appellate courts have resolved a claim under La. R.S. 23:1208 by a motion for summary judgment. Id.; Louisiana-I Gaming v. Rogers, 10-1050 (La. App. 5 Cir. 09/27/11), 76 So.3d 81, 82; Stephens v. Southern Sweeping Services, 03-826 (La. App. 5 Cir. 11/25/03), 862 So.2d 197, 199-200; Caye v. Slidell Travel Center, 02-208 (La. App. 1 Cir. 12/31/02), 837 So.2d 144, 1478, writ denied, 03-338 (La. 4/21/03), 841 So.2d 797. The purpose of La. R.S. 23:1208 is to prevent and discourage fraud in workers' compensation claims. Morris v. Textron Marine and Land Systems, Inc., 14-203 (La. App. 1 Cir. 9/24/14), 155 So.3d 21, writ denied, 14-2223 (La. 1/9/15), 157 So.3d 1108.

La. R.S. 23:1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining worker's compensation benefits, and therefore, generally becomes applicable at the time of an employee's accident or claim. Resweber v. Haroil Construction Company, 94-2708, 94-3138 (La. 09/05/95), 660 So.2d 7, 9; Rodriguez v. Nola Motor Club, L.L.C., 19-447 (La. App. 5 Cir. 10/5/20), 304 So.3d 147, 149, writ denied, 20-1432 (La. 2/17/21). For purposes of summary judgment in the forfeiture context, there must be no genuine issue that there was 1) a false statement or misrepresentation; 2) made willfully; and 3) for the purpose of obtaining benefits. Resweber, 660 So.2d at 12; Louisiana-I Gaming, 76 So.3d at 82. The relationship between the false statement and the pending claim is probative in determining whether the statement was made willfully for the purpose of obtaining benefits.

Resweber, 660 So.2d at 15.  A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits.  Id. at 16.

After reviewing the evidence, the OWC judge found no genuine issue of material fact existed regarding whether Rodney violated La. R.S. 23:1208 in that the motion and attachments thereto showed Rodney willfully made false statements regarding the occurrence of her alleged injuries, her prior injuries, and prior medical treatment for the purpose of obtaining workers' compensation benefits.  As a result, the OWC judge found Rodney forfeited her right to workers' compensation benefits under La. R.S. 23:1208 E, and granted Employers' motion for summary judgment.

Further, the OWC judge found that Rodney can produce no evidence in support of her claim and therefore cannot meet her burden of proving at trial that she sustained injuries related to a June 21, 2019 work accident.

Upon *de novo* review, we find the record on appeal supports the OWC judge's conclusions that there is no genuine issue of fact that Rodney willfully made multiple misrepresentations for the purpose of obtaining workers' compensation benefits in violation of La. R.S. 23:1208 A, and therefore forfeited her workers' compensation benefits under La. R.S. 23:1208 E.  Moreover, Rodney has failed to introduce *any* evidence or factual support of her claim whatsoever to sustain her burden of proof at trial.

### *Misrepresentations Regarding the Alleged Accidents*

The record shows Rodney made false statements regarding the cause of her two falls and how she landed after each fall.  Specifically, with respect to her first fall, Rodney testified at her deposition that, as she entered the locker room, she was startled by the plastic "bug flappers" and when she turned to look at them, she fell, landing directly on her hands and knees.  Then on June 25, 2019, at West Jefferson Industrial Medicine, she reported that she fell after being startled by the plastic flaps,

tripped on a rug, and fell on her left side with her hands outstretched. That same day, in a written statement, she returned to her account of tripping on the rug and landing on her hands and knees. Subsequently, on July 1, 2019, Rodney indicated to Dr. Peter Liechty that she landed on her knees and wrists.

Despite having given several different accounts of her first fall, none of them coincide with the security camera footage of Rodney's fall, which indicates Rodney stumbled and fell forward. More importantly, the video shows that Rodney did not land in any manner that she had previously reported, *i.e.*, on her hands and knees, on her left side with her arms outstretched, or on her knees and wrists. The video actually establishes that Rodney fell with her right arm outstretched and landed on her right side.

As for her second fall when she was walking into the Daily Directional Setting ("DDS") meeting, Rodney stated in her deposition she took three or four steps forward and fell again. Rodney also testified in her deposition that she felt the hooks of her right shoe get caught on the laces of her left shoe, causing her to fall. With regard to how she landed, Rodney indicated after the second fall, she landed on her left side, specifically her left knee, left elbow, and her left buttock.

Witnesses' accounts of Rodney's second fall contradict Rodney's accounts of her second fall. Rodney's co-workers, Raeann Roark and Glenda Turner, both observed Rodney sitting down on the floor, with both her legs extended out straight in front of her after the second fall.[2] In addition, during an October 22, 2020 evaluation, Rodney told her treating physical therapist that she fell on her hands and knees in the first and second fall.

---

[2] An affidavit from Roark was attached to Employers' motion for summary judgment. Turner's post-accident statement was attached as an exhibit to the affidavit of Chantell Jennings, the Safety, Health and Environmental Manager on the date of the accident, June 21, 2019, who attested to the authenticity of various exhibits.

Rodney's misrepresentations regarding how her falls occurred and how she landed are material because (1) the occurrence of an accident is essential to a claim for workers' compensation benefits; and (2) determination of whether Rodney's alleged falls caused her claimed injuries would take into account what she injured first and what was most directly impacted by the alleged falls.

### *Misrepresentations Regarding Her Injuries*

Rodney also made inconsistent statements as to whether she was injured and what injuries she suffered as a result of her falls. Rodney initially claimed she was fine and had no injuries, but thereafter claimed to have suffered several injuries.

During her deposition, Rodney testified that after her second fall in the trailer, her back, palms, knees, and right ankle were hurting, and that she was limping. This testimony is contradicted not only by witnesses to Rodney's second fall but also by her own written statement. After the second fall in the DDS meeting, Rodney told other employees, including Roark and Turner, multiple times that she was not injured. In addition, Rodney told Roark she was able to go up the stairs to the mezzanine and work. In addition, immediately following her fall in the trailer, Rodney performed all the pre-shift stretches that were required of employees during DDS meetings without difficulty or complaint. Rodney attempted to demonstrate to her crew leaders that she was uninjured by voluntarily walking a straight line on the floor of the trailer. If Rodney was hurting during the meeting as she testified during her deposition, it is unlikely she would have been able to perform the pre-shift stretches or walk the straight line on the trailer floor. Moreover, in her own written statement, Rodney stated that she did not begin to hurt until she returned home, which contradicts her deposition testimony that she was in pain at the DDS meeting.

Rodney's claims regarding specific injuries frequently varied. In her deposition, Rodney testified that during the DDS meeting, she had pain in her back, palms, knees, and right ankle, as well as that she was limping. In addition, Rodney

told her physical therapist that she developed back pain within 24 hours of her falls. Nevertheless, during her late-night visit to the emergency department on June 21, 2019, Rodney did not report that she injured her back and palms; instead, she reported that she injured her bilateral wrists, bilateral knees, right ankle, and right shoulder.

Rodney's account of what happened after the DDS meeting regarding her circumstances is also inconsistent with other evidence. In her deposition and in discovery responses, Rodney indicated that after the DDS meeting, Jennifer Barr, the Operations Manager at the time, told her to go relieve the first shift of employees and that they would address Rodney's falls later. Barr, however, was not present at the DDS meeting and did not direct Rodney in the manner Rodney claimed. In an affidavit, Barr stated that prior to learning of Rodney's falls, she and Corey Thomas, the Human Resources Manager, had agreed to meet with Rodney to discuss her excessive absences. On her way to find Rodney for this pre-planned meeting, Barr learned Rodney had tripped and fell. According to Barr, during the meeting, Rodney told her she was fine, and that she was just embarrassed. During the meeting regarding her absences, Rodney became very upset and started crying, claiming she has a "tough life" that no one understands. When she was instructed to go home given the fact she was so upset, Rodney became angry, hostile and threatened to retain an attorney. In her affidavit, Barr stated that Rodney did not appear to be in any pain, to be injured, or to require medical attention, and Rodney did not indicate she suffered any injuries to Barr at this time.

Subsequently, on June 25, 2019, Rodney went to Dr. Brian Bourgeois at West Jefferson Industrial Medicine, asserting she injured her "face, both wrists, right elbow, both shoulders, both knees, and both ankles." In his June 25, 2019 evaluation, Dr. Bourgeois observed in his visit note that Rodney "does not seem to

be able to or is not interested in giving complete accurate answers that are consistent with the medical records that were downloaded from her visit."

Unlike her injury claims at West Jefferson on June 25, 2019, the First Report of Injury, which Rodney completed that same day, reflects Rodney only reported that her right shoulder was injured. Six days later on July 1, 2019, Rodney reported to Dr. Peter Liechty injuries to her neck, low back, and a twisted right ankle, but not injuries to her face, right elbow, and shoulders. Again changing her list of claimed injuries, during her February 9, 2022, deposition, Rodney maintained her complaints of injuries to her bilateral wrists, bilateral knees, and neck, but she changed her back complaint from her low back to her entire back, and she renewed her previously abandoned complaint of a right ankle injury. She also specifically testified that she did not injure either shoulder in the falls. This contradicts her earlier reports of right shoulder and bilateral shoulder injuries.

Rodney's misrepresentations are also reflected by medical records from her emergency room visit the day of the incidents. Rodney testified in her deposition that she skinned her knees in her falls, and that when the doctor took off her shoe in the emergency room on June 21, 2019, her ankle was swollen. Rodney also told her physical therapist that when she was seen in the emergency room on June 21, 2019, her knee, ankle, and elbow were swollen. Medical records from her emergency room visit contradict these claims in that the records do not reflect any abrasions or swelling of any part of her body. In addition, the emergency department staff observed Rodney moving all her extremities, including talking on her phone using the arm of her allegedly affected right shoulder, without any distress.

Next, despite claiming multiple injuries, Rodney did not even mention to her primary care physician, Dr. Andre Tilton, that she had fallen or sustained any injuries at an appointment on July 19, 2019. Rodney first reported her falls to Dr. Tilton at an August 2, 2019 appointment, but at six more appointments with Dr. Tilton before

the end of 2020, Rodney did not mention the injuries she claimed to suffer because of the two falls at work.

In addition, on January 30, 2020, at a visit to the emergency room at Ochsner West Bank Medical Center, Rodney denied having any back pain, and her evaluation was negative for back pain, neck pain, and neck stiffness. Contrary to these reports, however, when Rodney visited Dr. Liechty the following day, January 31, 2020, she suddenly reported that she had both neck and low back pain.

Later in 2020, at a December 4, 2020 visit to Ochsner West Bank Medical Center, Rodney complained of dizziness, and was observed on examination to have normal range of motion in her neck and musculoskeletal system and no tenderness in her ankle, knee, hip, shoulder, neck, elbow, or wrist. But, three days later, on December 7, 2020, Rodney reported to Dr. Liechty that her neck and back pain was worsening and had prompted her to seek treatment at the emergency room.

In sum, immediately after her falls, Rodney told her coworkers she was not injured and did not require medical attention. She then proceeded to participate without complaint or difficulty in the requisite pre-shift stretching routine. It was not until after Rodney's supervisors brought up her excessive absences from work that Rodney claimed she injured herself during her falls and sought medical attention. Thereafter, Rodney's false and inconsistent injury claims make it extremely difficult, if not impossible, to evaluate, investigate, and litigate her claim. Thus, Rodney's misrepresentations are clearly material to the resolution of her claim.

### *Rodney materially misrepresented her ability to work*

Rodney also misrepresented her ability to work. On July 25, 2019, Rodney reported to Dr. Liechty that, as a result of her injuries from the alleged falls, she was "struggling" to continue light duty work. As a result, Dr. Liechty declared Rodney completely and temporarily disabled and restricted her from all work entirely. Based

on Rodney's complaints of neck and back pain, Dr. Liechty maintained his finding that Rodney was completely and temporarily disabled and continued to restrict her from all work entirely through at least October 29, 2021.

Although Dr. Liechty had restricted Rodney from work for over two years, Rodney disclosed in her responses to interrogatories that since June 21, 2019, she had earned some income from childcare, tutoring, and styling hair. In her supplemental responses to interrogatories, Rodney stated that except for a four-month break between June 21, 2019, and October 11, 2019, to allow her wrist to heal, she was self-employed as a hair stylist until March 17, 2020. Nowhere in Dr. Liechty's records is there any indication Rodney ever informed Dr. Liechty she was working as a hair stylist, childcare provider, or a tutor when he had restricted her from work.

In addition, Rodney testified in her deposition that she could no longer style hair because it required a lot of standing, and standing for too long caused her to have ridiculously unbearable spasms. Rodney's testimony that she was unable to stand for long periods of time is contradicted by the fact that from November 22, 2021 to December 31, 2021, at a time when Dr. Liechty had restricted her from work, she worked at the United States Postal Service ("USPS"), a job that required the ability to stand for her entire shift. Rodney's worked for the USPS five days a week with shifts for seven-and-a-half-hours. Rodney testified that she did not tell Dr. Liechty about her job with the USPS.

Based on the above, it is clear Rodney made misrepresentations to Dr. Liechty regarding her ability to work. These misrepresentations are material to the issue of Rodney's entitlement to indemnity benefits.

The record shows no genuine issue of material fact exists as to whether Rodney's misrepresentations were willful, given her extensive false deposition testimony and false reports to numerous medical providers. Rodney had counsel at

her deposition and was informed she was under oath and was required to tell the truth. Despite this, Rodney gave numerous false statements during her deposition regarding how the alleged falls occurred, how she landed, whether she was injured, what she injured, her ability to work, and her medical history. In addition, Rodney made false statements to her medical providers about many of the same topics, including how she landed, what injuries she suffered, and her ability to work.

**DECREE**

For the foregoing reasons, we find no genuine issue of material fact exists regarding whether Rodney willfully violated La. R.S. 23:1208 A, thereby forfeiting workers' compensation benefits for these falls. We further find that Rodney failed to introduce any evidence or produce any factual support sufficient to sustain her burden at trial. We therefore find the OWC judge properly granted summary judgment in favor of Zatarains a/k/a McCormick & Co., Inc. and Gallagher Bassett Services, Inc., and dismissed Danelle Rodney's claim. Accordingly, we affirm the OWC's judgment.

<b><u>AFFIRMED</u></b>

ZATARAINS & GALLAGHER BASSETT
SERVICES, INC.

VERSUS

DANELLE RODNEY

NO. 24-CA-128

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


**JOHNSON, J., DISSENTS, IN PART, WITH REASONS**

I, respectfully, dissent, in part, with the majority opinion in this matter. I agree that the Office of Workers' Compensation ("OWC") properly struck the opposition to the summary judgment and denied the motion to continue the summary judgment hearing filed by Defendant/Appellant, Danelle Rodney. However, I find that the OWC legally erred in granting summary judgment in favor of Plaintiffs/Appellees, Zatarains a/k/a McCormick & Co., Inc. and Gallagher Bassett Services, Inc. ("Employers"), determining Ms. Rodney willfully made false statements or misrepresentations for the sole purpose of obtaining workers' compensation benefits. I find there are remaining genuine issues of matter fact concerning whether Ms. Rodney willfully made false statements or misrepresentations regarding her alleged incidents that precludes a summary judgment determination in favor of Employers. For the following reasons, I would reverse the trial court's summary judgment.

In this matter, Ms. Rodney claimed that, on June 21, 2019, she fell two times—in an employee locker room and outside of a trailer at Employers' facility—while in the course and scope of her employment, resulting in injuries to her knees, wrists, shoulders, neck, back, and right ankle. In opposition, Employers disputed Ms. Rodney's claims for

compensation and, ultimately, filed a motion for summary judgment, seeking a determination that Ms. Rodney willfully violated La. R.S. 23:1208, committed fraud, and forfeited any and all rights to workers' compensation benefits. The OWC granted Employers' summary judgment and requested determinations. It also found Employers were entitled to reimbursement and/or restitution of benefits paid, attorney's fees, and penalties.

A court shall grant a motion for summary judgment if the motion, memorandum, and supporting documents show that there is no genuine issue regarding material facts and that the mover is entitled to judgment as a matter of law. *Gibson v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 23-538 (La. App. 5 Cir. 5/29/24), 389 So.3d 977, 980, citing La. C.C.P. art. 966(A)(3). A material fact is one that potentially ensures or prevents recovery, affects a litigant's ultimate success, or determines the outcome of the lawsuit. *Populis v. State Department of Transportation and Development*, 16-655 (La. App. 5 Cir. 5/31/17), 222 So.3d 975, 980, *writ denied*, 17-1106 (La. 10/16/17), 228 So.3d 753. An issue is genuine if it is such that reasonable persons could disagree. *Id.* In determining whether a factual issue is genuine for purposes of summary judgment, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Crescent City Property Redevelopment Assoc., LLC v. Muniz*, 21-371 (La. 6/1/21), 347 So.3d 682, 684, *reh'g denied*, 21-371 (La. 10/01/21), 324 So.3d 1057.

The party moving for summary judgment bears the burden of proof. La. C.C.P. art. 966(D)(1). However, if the mover will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the

adverse party's claims. *Id*.; *Stogner v. Ochsner Clinic Foundation*, 18-96 (La. App. 5 Cir. 9/19/18), 254 So.3d 1254, 1257. Thereafter, the burden shits to the adverse party to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial. *Id*. Once the motion for summary judgment has been ***properly supported*** by the moving party, the failure of the adverse party to produce evidence of a material factual dispute mandates the granting of the motion. *Gibson*, 389 So.3d at 258. Appellate courts review summary judgments *de novo*, using the same criteria the trial court applies to determine whether summary judgment is appropriate. *Id*. at 257.

After *de novo* review, I find that Employers failed to meet their summary judgment burden of proof. Although Ms. Rodney failed to timely file a brief and present any evidence in opposition to Employers' summary judgment, the evidence presented by Employers actually showed that there are different versions of the circumstances relating to Ms. Rodney's falls and alleged injuries. Consequently, the evidence presented to the OWC by Employers created the genuine issues of material fact regarding whether Ms. Rodney willfully made false statements or misrepresentations for the sole purpose of obtaining workers' compensation benefits, rendering the fact that Ms. Rodney failed to file an opposition irrelevant. Thus, the summary judgment burden of proof never shifted to Ms. Rodney to defend her claims.

In affirming the OWC's judgment, the majority opinion is replete with the weighing of evidence and factual determinations regarding Ms. Rodney's falls and alleged injuries, which are improper on summary judgment review. *See*, *Muniz*, *supra*. The majority opinion cites Ms. Rodney's statements recounting the falls versus witnesses' accounts of her

falls as support for affirming the OWC's summary judgment. The alleged misrepresentations cited by the majority opinion call into question how Ms. Rodney landed after her falls, not whether Ms. Rodney experienced two falls on Employers' property. The evidence presented by Employers corroborate the fact that Ms. Rodney fell on two different occasions on June 21, 2019. Thus, there are clearly genuine issues of material fact remaining as to whether Ms. Rodney's alleged injuries resulted from the two incidents.

For the foregoing reasons, I find that Employers failed to meet their burden of proving there are no genuine issues of material fact concerning Ms. Rodney's falls or alleged injuries, which is shown through the conflicting versions of the events presented by Employers. Because there are remaining genuine issues of material fact, I further find that the OWC improperly determined Ms. Rodney willfully made false statements or misrepresentations for the sole purpose of obtaining workers' compensation benefits. A full trial on the merits would necessary for that determination in this matter. Therefore, I would reverse the summary judgment in favor of Employers and remand the matter for further proceedings.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 27, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 24-CA-128

## E-NOTIFIED

OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
HON. SHANNON BRUNO BISHOP (DISTRICT JUDGE)
AZELIE Z. SHELBY (APPELLEE)          SCOTT R. SAMUEL (APPELLANT)

## MAILED

SARAH K. LUNN (APPELLEE)             GEORGE READ COLEMAN (APPELLANT)
ATTORNEY AT LAW                      ATTORNEY AT LAW
3070 TEDDY DRIVE                     3421 NORTH CAUSEWAY BOULEVARD
BATON ROUGE, LA 70809                SUITE 201
                                     METAIRIE, LA 70002